**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

TARIQ MAHMUD                                          CIVIL ACTION NO. 1:26-0107

                                                     SECTION P
VS.
                                                     JUDGE JERRY EDWARDS, JR.

WARDEN RIVER CORRECTIONAL            MAG. JUDGE KAYLA D. MCCLUSKY
CENTER, ET AL.

## REPORT AND RECOMMENDATION

Petitioner Tariq Mahmud,[1] a detainee at River Correctional Center in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE") who proceeds pro se, petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[2]  Respondents oppose the petition.  [doc. # 17].  For reasons below, the Court should grant Petitioner's request for release from custody.

## Background

Petitioner is a citizen of Bangladesh.  He was taken into immigration custody on July 25, 2024.  [doc. # 1, p. 4].  On February 12, 2025, an immigration judge ordered him removed from the United States, but the immigration judge withheld removal to Bangladesh.  [doc. #s 1, pp. 4, 10; 17-1, p. 2].  Petitioner did not appeal the removal order.  *Id.*

Petitioner filed this proceeding on approximately January 2, 2026.  [doc. # 1, p. 8].  He first claims that he "has been detained in immigration custody since July 2024, eighteen months,

---

[1] Petitioner's "A-Number" is 241-417-195.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

even though no neutral decisionmaker has conducted a hearing to determine whether this lengthy incarceration is warranted based on danger or flight risk." *Id.* at 6.

Next, Petitioner claims that his "prolonged detention violates [the] *Zadvydas* framework" because his removal is not reasonably foreseeable. [doc. # 1, pp. 6, 10].

Respondents opposed the petition on May 18, 2026. [doc. # 17].

## **Jurisdiction**

Under 28 U.S.C. § 2241(c)(3), the Court has federal subject-matter jurisdiction over habeas petitions filed by aliens claiming they are being detained "in violation of the Constitution or laws or treaties of the United States." *See Zadvydas*, 533 U.S. at 687. The 'REAL ID Act' of 2005 divests federal courts of jurisdiction over several categories of immigration proceedings. *See* Pub. L. No. 109-13, Div. B, 119 Stat. 231 (2005). District courts may not review challenges to final orders of removal. 8 U.S.C. § 1252(a)(5); *Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007). And no federal court may review any action that is committed to the discretion of the Attorney General or the DHS Secretary, 8 U.S.C. § 1252(a)(2)(B)(ii), including decisions "regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole," 8 U.S.C. § 1226(e).

The Supreme Court recognized a distinction between challenges to individual, discretionary detention decisions—which are prohibited—and "challenges to the statutory framework that permits [an] alien's detention without bail"—which remain cognizable under the habeas statute. *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (internal alterations omitted) (citing *Demore v. Kim*, 538 U.S. 510, 516 (2003)); *see Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 135 (D.D.C. 2018) ("While§ 1252(a)(2)(B)(ii) undoubtedly bars judicial review of

individual parole decisions, courts have declined to apply it to claims challenging the legality of policies and processes governing discretionary decisions under the INA.").

Despite any statutory limitations on judicial review, federal courts retain "jurisdiction to review [an alien's] detention insofar as that detention presents constitutional issues," *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005), such as "questions of law regarding the AG's statutory authority or the regulatory framework" governing immigration detention, *Garza-Garcia v. Moore*, 539 F. Supp. 2d 899, 903 (S.D. Tex. 2007); *see also Maldonado v. Macias*, 150 F. Supp. 3d 788, 794 (W.D. Tex. 2015) ("[E]ven after the passage of the REAL ID Act, district courts retain the power to hear statutory and constitutional challenges to civil immigration detention under § 2241 when those claims do not challenge a final order of removal, but instead challenge the detention itself.").

Here, under *Zadvydas*, this Court enjoys jurisdiction over Petitioner's constitutional claim.

### Law and Analysis

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491.  After that, the Court concluded, if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[3]  If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

 "[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700.

Here, Petitioner has been in custody beyond the presumptively reasonable six-month period.  To date, he has been detained 441 days (or 1 year, 2 months, 15 days) following his final order of removal.  In addition, he meets his initial burden of providing good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.  For 441 days, the Government has been unable to obtain a travel document for him.

Petitioner states that ICE refuses to release him and that there are no "possible removal destinations demonstrated or any viable removal plan." *Id.*  He is not a citizen of any other

---

[3] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

country other than Bangladesh, and he does not "have the right to reside in any other country[.]" *Id.* at 10. He states, "Respondents' half-hearted attempts to remove Petitioner [amount to] a random collection of unspecified alternative countries—to which he has no ties, and which have no policy or history of accepting non-citizen deportees—are speculative and futile." *Id.* at 10-11. ICE has not informed him "to which specific countries it is attempting to remove him." *Id.* at 14.

Petitioner also argues: "[I]t is exceedingly unlikely that ICE will identify an alternative country to which it can remove Petitioner. ICE only managed to remove to third countries approximately three percent of non-citizens granted withholding and CAT relief in FY 2019 and 2020, . . . and a significant increase in ICE's third country removals is highly doubtful without a substantial change in diplomatic relationships between the United States and other countries." [doc. # 1, p. 17]. He adds, "Given this history, it strains credulity to think that ICE will be able to remove Petitioner to a random collection of alternative countries that have recently and repeatedly declined to accept the deportation of similarly situated individuals." *Id.* He goes on:

> Even in the highly unlikely scenario that an alternative country notifies ICE of its willingness to accept the deportation of Petitioner, ICE would still be required to obtain travel documents and afford him a Reasonable Fear Interview (RFI) at which he would have the opportunity to articulate a fear of return to the country willing to accept him. . . . If an Asylum Officer (AO) were to find that Petitioner demonstrated a reasonable possibility or presentation of torture at the RFI, or an Immigration Judge subsequently vacated a negative finding by the AO, he would enter withholding-only proceedings before an IJ in which he would again seek to demonstrate his eligibility for withholding or CAT relief with respect to that country, thereby restarting the process that took several months to complete the first time.
>
> . . . .
>
> [T]he question here is whether ICE will be able to remove Petitioner to random third countries to which he has no connection whatsoever. The answer to that question has been no from the moment Petitioner's relief grant became final, and the likelihood of third-country removal has only decreased since then.
>
> . . . .

ICE's uncertain and contradictory statements regarding possible removal destinations demonstrate the absence of any viable removal plan.

*Id.* at 18-19, 30.

Respondents do not rebut Petitioner's arguments. Respondents do not provide any evidence indicating that, for instance, travel documents are forthcoming or that ICE has made meaningful progress in effectuating Petitioner's removal. Instead, they rather disingenuously contend that Petitioner's petition "fails due to its lack of specific allegations" and that Petitioner "has offered nothing beyond the fact of the duration of his post removal order detention." [doc. # 17, p. 7].

Respondents attach the declaration of Supervisory Detention and Deportation Officer Christopher Rabe, who declares in part:

13. On April 11, 2025, ICE sent a request to accept Petitioner to the Permanent Mission of the Kingdom of Bhutan, United Nations. ICE did not receive a response to their request.

14. On May 13, 2025, ICE sent a request to accept Petitioner to the Honduran Consulate. On May 13, 2025, Honduras declined to accept the Petitioner.

15. On June 15, 2025, ICE sent a request to accept Petitioner to the Colombian Consulate.

. . . .

19. On August 30, 2025, ICE forwarded the case to ERO Headquarters for assistance in Petitioner's third country removal. ICE also sent Petitioner a sworn statement requesting information that could assist in identifying a potential third country for removal.

. . . .

21. ICE requested a case update from HQRIO and was informed on September 30, 2025, and December 20, 2025, that there was no update.

22. On February 20, 2026, ICE sent Petitioner a third country interview form.

23. On February 22, 2026, ICE received a completed third country interview form from Petitioner.

24. ICE requested a case update from HQRIO on March 17, 2026, April 10, 2026, April 25, 2026, and May 8, 2026.  As of today, there have been no updates to Petitioner's third country removal.

[doc. # 17-1, p. 2].

That ICE (i) received no response from the Kingdom of Bhutan, (ii) received a declination from Honduras, (iii) sent a request to accept Petitioner to Colombia, to which there is no indication of a response, (iv) asked ERO Headquarters for assistance, (v) requested information from Petitioner to assist in identifying a potential third country for removal, (vi) received a completed third country interview form from Petitioner, and (vii) requested case updates from HQRIO multiple times and received no update, does not establish that removal is significantly likely to occur in the reasonably foreseeable future.  Likewise, that Respondents have not obtained a travel document following the actions above suggests that a travel document is not *significantly likely* to be forthcoming in the reasonably foreseeable future.  Respondents essentially present requests to accept Petitioner, requests for assistance, and requests for information—which are efforts at progress—followed by no indication of progress in approximately 14 months along with no indication that progress will occur.  The longer a request remains pending without any action, "what counts as the 'reasonably foreseeable future' conversely would have to shrink."  *See Zadvydas*, 533 U.S. at 701.

Respondents have not even identified a third country for Petitioner's removal, much less made any efforts at securing a travel document for a specific country (apart from the efforts described above).  From the record, it appears that they have not even started the process of attempting to remove Petitioner.  And they do not state how long it will take after the process

7

begins.  Yet, they still detain him.  While not dispositive, the undersigned finds it persuasive that Petitioner has endured 672 days of total detention (or 1 year, 10 months, 3 days).

Respondents do not state that travel documents can be obtained or are forthcoming. Rather, they suggest that obtaining travel documents is beyond their control.  They state specifically that the "processes for obtaining a temporary travel document from another country are complex, multi-faceted, and include considerations of diplomacy that are beyond the control of ICE."  [doc. # 17, p. 7].

Respondents provide no evidence—or reasons to conclude—that  a travel document is forthcoming.[4]  They do not, for example, provide any evidence that they have made progress in obtaining travel documents, that they have been communicating with any country about Petitioner's deportation (apart from sending the requests above), that any country has recently

---

[4] *See Gabremicheal v. Gonzales*, 2007 WL 624602, at *3 (W.D. La. Jan. 31, 2007) ("There is simply no indication that any effort is being made to obtain a travel document for Gabremicheal or that a travel document is likely to issue in the reasonably foreseeable future."); *Azad v. Interim Dist. Director, New York,* 2009 WL 2569132 (S.D.N.Y., August 19, 2009) (finding that ICE failed to rebut a showing by petitioner where ICE's contacts with the local Consulate of Bangladesh resulted only in statements that the consulate was awaiting confirmation of information); *Mohamed v. Ashcroft,* 2002 WL 32620339 (W.D. Wash., April 15, 2002) (granting petitioner habeas corpus relief where the government failed to offer any "specific information regarding how or when [it] expect[ed] to obtain the necessary documentation or cooperation from the Ethiopian government."); *Islam v. Kane*, 2011 WL 4374226, at *1 (D. Ariz. Aug. 30, 2011), *report and recommendation adopted,* 2011 WL 4374205 (D. Ariz. Sept. 20, 2011) ("Other than stating that the travel document request is 'pending,' Respondent provides no details about the status of Petitioner's travel document, such as whether DHS has received any assurances that travel documents are forthcoming, or whether the Bangladesh Consulate is even willing to issue a travel document for Petitioner."); *Shefqet v. Ashcroft*, 2003 WL 1964290, at *5 (N.D. Ill. Apr. 28, 2003) (finding that the government failed to meet its burden in part because there was no evidence that Guyana had responded to the request for travel documents); *Butt v. Holder*, 2009 WL 1035354, at *5 (S.D. Ala. March 19, 2009) (holding that the petitioner met his initial burden when he was held in ICE custody for more than ten months after the issuance of his removal order with no indication from the Pakistani Embassy that travel documents would be issued); *Palma v. Gillis,* 2020 WL 4880158, at *2 (S.D. Miss. July 7, 2020).

accepted others similarly situated to Petitioner, that any country has an agreement or treaty with the United States affecting Petitioner's removal, or that any country is willing to accept Petitioner.[5, 6]

Respondents cannot rest on bald assertions that removal is foreseeable without providing sufficient supporting evidence. "A theoretical possibility of eventually being removed does not satisfy the Government's burden once the removal period has expired and the petitioner establishes good reason to believe [that] his removal is not significantly likely in the reasonably foreseeable future." *Kane v. Mukasey*, 2008 WL 1139137 at *5 (S.D. Tex. 2008). As one Court stated, "if [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur—or even that it might occur—in the reasonably foreseeable future." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019).

---

[5] The undersigned lists these non-exhaustive examples for general illustrative purposes only.

[6] *See generally Heagan v. Jolicoeur*, 2006 WL 897709, at *3 (W.D. Tex. Mar. 31, 2006) ("Other than providing evidence that they are working with the governments of Liberia and Ghana to establish Petitioner's identity, Respondents have not presented evidence regarding the time period that they will need to establish Petitioner's identity. Nor have the Respondents, using their significant expertise, established any time period in which they believe they will be able to effectuate Petitioner's removal . . . . Respondents have not provided the Court with, nor does the Court envision, a way to determine whether the Liberian, Nigerian or Ghanian governments will issue the necessary travel documents to effect Petitioner's removal in the reasonably foreseeable future."); *Shengelia v. Ortega*, 2025 WL 3654368, at *3 (W.D. Tex. Dec. 16, 2025) ("The Government has undertaken third-country inquiries for months now and has produced no acceptances, travel documents, timelines, or scheduled removal. While it has received refusals from France and Uganda, inquiries to Canada, Armenia, Azerbaijan, and Turkey remain pending without response. . . . Even when ICE has 'identified a third country,' noncitizens like Petitioner 'would be entitled to seek fear-based relief from removal to that country, which would require additional, lengthy proceedings.'") (quoting *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 399 (D.N.J. 2025)).

Petitioner need not show that removal is impossible. *Zadvydas,* 533 U.S. at 702. Although there may be some possibility that Petitioner could be removed, an unsubstantiated possibility does not satisfy Respondents' burden.

Accordingly, Petitioner's detention is unreasonable; the Court should grant habeas corpus.[7]

### Conclusion

For the reasons above, **IT IS RECOMMENDED** that Petitioner Tariq Mahmud's petition for habeas corpus be **GRANTED**: Respondents, and the Warden of River Correctional Center, shall (A) immediately release Petitioner from custody without bond, under reasonable conditions of supervision if necessary and (B) if Petitioner has family and/or an emergency contact on record, notify them of the exact location and time of his release no less than two hours before his release.

**IT IS FURTHER RECOMMENDED** that any possible or anticipated removal or transfer of Petitioner under this present detention be **PROHIBITED**.[8]  Respondents shall, within **24 hours** after Petitioner's release, file a status report confirming his release.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

---

[7] The undersigned finds no need to address any claim or request for relief not addressed herein.

[8] In other words, it is the intent of the Court that Petitioner shall not be released only to be immediately taken back into custody.  The Court expresses no opinion as to whether Petitioner could or should be taken into custody at a later date if travel documents were to be obtained.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 29th day of May, 2026.

_____
Kayla Dye McClusky
United States Magistrate Judge